THE PEOPLE OF THE STATE OF NEW YORK ex rel. REPUB-
LICAN AND JOURNAL COMPANY, Appellant, *v.* EDWARD
LAZANSKY, as Secretary of State, et al., Respondents.

Jurisdiction — order in certiorari proceedings which annulled
designation of newspaper to publish session laws — newspaper
thereafter appointed to publish session laws may recover for
services, while official paper, although order annulling designa-
tion of first paper was reversed by Court of Appeals.

1. Jurisdiction is the power to hear and determine the subject-
matter in controversy in the suit before the court, and the rule is
universal that if the power is conferred to render the judgment or
enter the decree, it also includes the power to issue proper process
to enforce such judgment or decree.

2. Certiorari is a common-law writ known from very early times
and issued by the King's Bench, the jurisdiction of which became
vested in the Supreme Court of this state, and the method of the
exercise of which is prescribed by the Code of Civil Procedure.

3. A board of supervisors designated a newspaper to publish the
session laws and concurrent resolutions. On review of this action
by certiorari on behalf of another newspaper, the Appellate Divi-
sion annulled the designation, whereupon the relator was desig-
nated by the board as the official paper. Thereafter the action of
the Appellate Division was reversed (199 N. Y. 382) and the relator
applied for a mandamus to compel the comptroller to audit its bill
for services rendered while it was the official paper under such
designation. *Held*, that since the judgment of a competent court
is binding until it is reversed, the relator is entitled to be paid for
services rendered until the reversal of the order of the Appellate
Division in the certiorari proceeding. *Knickerbocker Trust Co.* v.
*Oneonta, C. & R. S. R. Co.*, 201 N. Y. 379, 384, distinguished.

*People ex rel. Republican & Journal Co.* v. *Lazansky*, 153 App.
Div. 547, reversed.

(Argued April 16, 1913; decided May 23, 1913.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered
November 27, 1912, which reversed an order of Special
Term granting a motion for a peremptory writ of man-

damus to compel the defendants to certify and pay a claim of the relator for the publication of legislative proceedings.

*W. G. Kellogg* for appellant. The order of the Appellate Division dated May 3, 1910, annulling the designation of the *Courier and Freeman,* having been made by a court of competent jurisdiction, was absolutely valid and controlling for all purposes and all proceedings based upon it were entirely valid until the order was reversed on appeal. (*Langley* v. *Warner,* 3 N. Y. 327; *Thaxter* v. *Thane,* 100 App. Div. 488; *Lovett* v. *German Reformed Church,* 12 Barb. 67; *Lesster* v. *Lawyers' Surety Co.,* 50 App. Div. 181; *Park Hill* v. *Herriot,* 41 App. Div. 324; *Abrams* v. *Lavine,* 90 Hun, 566.)

*Thomas Carmody, Attorney-General (James A. Parsons* of counsel), for respondents. The relator had no valid designation. The judgment of the Court of Appeals reversing the Appellate Division order vacated any designation it had. (*People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92.) A publication in a newspaper not properly and legally designated creates no liability. (*People ex rel. Thompson* v. *Supervisors,* 73 N. Y. 604; *People ex rel. Union & Advertiser Co.* v. *Suprs. of Monroe,* 60 Hun, 328; *Matter of Troy Press,* 94 App. Div. 514; 179 N. Y. 529.) At the time of the commencement of these proceedings the *Republican and Journal* had no legal designation. It is, therefore, not entitled be paid for something it was not authorized to do. (*Knickerbocker Trust Co.* v. *O., C. & R. S. Ry. Co.,* 201 N. Y. 379; *Kamp* v. *Kamp,* 59 N. Y. 212; *People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559; *Dolan* v. *Mayor,* 68 N. Y. 274; *People* v. *Van Nostrand,* 46 N. Y. 375.)

CULLEN, Ch. J. In December, 1909, the Republican members of the board of supervisors of St. Lawrence county, acting pursuant to section 20 of the County Law, designated the *Courier & Freeman,* a newspaper pub-

lished at Potsdam, to publish the session laws and concurrent resolutions for the year 1910. On December 31st, 1909, the relator, the owner and publisher of another paper, claiming that its paper should have been designated, sued out a writ of certiorari. In May, 1910, the Appellate Division in the third department rendered a final order annulling the action and determination of the supervisors. Thereafter, in June, 1910, in obedience to a writ of mandamus issued by the Supreme Court at the instance of the relator, the Republican supervisors designated the relator as the official paper for the purposes mentioned. On October 25th, 1910, this court reversed the decision of the Appellate Division. (199 N. Y. 382.)

For the services rendered by it under the designation, which were prior to the decision of this court, the relator demanded payment by the comptroller of the state, which was refused. Thereupon it applied for a mandamus to compel that officer to audit and pay its bill. The Special Term granted the application which the Appellate Division reversed, and from that order an appeal has been taken to this court.

The decision of the Appellate Division seems to have proceeded on the theory that in rendering the decision in the certiorari case annulling the designation of the *Courier & Freeman* the court exceeded its powers, and that hence no party, neither the relator nor a third party acting in good faith, was protected by it. This presents the question in the case. While this court reversed the order of the Appellate Division on the ground that the determination of the supervisors was an administrative act and not reviewable by certiorari, did that import that the order of the Appellate Division was void? Doubtless a court to enter a judgment which shall be efficacious must have jurisdiction of the parties and of the subject-matter, and also jurisdiction to render the judgment made by it. Clearly the court had jurisdiction of the parties, but it is insisted that it did not have jurisdiction of the subject-

matter because it was finally determined that the action of the supervisors was administrative. "Jurisdiction is defined to be the power to hear and determine the subject-matter in controversy in the suit before the court, and the rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree." (*Riggs* v. *Johnson County,* 6 Wall. 166, 187.) The subject-matter in controversy in the certiorari proceeding was not merely whether the decision of the supervisors was right or wrong. There lay back of that the character of the act sought to be reviewed — whether it was subject to review by certiorari or not — and this was just as integral a part of the subject-matter of the controversy as the question whether the act was right or wrong.

In *Fisher* v. *Hepburn* (48 N. Y. 41, 51) an action had been brought to compel the determination of claims to certain real property in the city of New York and judgment therein was rendered. Subseqently a motion was made to vacate and annul the judgment on the ground that it appeared from the judgment roll that the case was not one in which an action to determine claims to real estate was authorized by the Revised Statutes. The order was granted and on its affirmance by the General Term, an appeal was taken to this court. The order was reversed. Judge EARL said: "This action was commenced in the Supreme Court; a court of general jurisdiction in law and equity. The respondent was properly served and brought into court, and she appeared and answered, and defended the cause in all its stages. * * * Suppose there had been no statute authorizing an action or special proceeding to determine the conflicting claims to real estate, and the plaintiff had commenced this action in equity, alleging his title, possession, etc., and that the defendants unjustly claimed title to the real estate, and praying that his title might be established and quieted, and the conflicting claims determined; and suppose the

defendants had answered and defended as they have in this case; the court having jurisdiction of the parties, one of the questions for it to determine would be whether such an action could be maintained. If the defendants made no objection to the sufficiency of the complaint, and litigated the cause upon the merits, could there be any doubt that they would be bound by the judgment pronounced? But suppose they did raise objections, it would be the duty of the court to deside such objections, and if the court erred, the only mode of review known to the law would be by appeal from the judgment, or a motion for a new trial, upon a case or bill of exceptions." (See, also, *Bangs* v. *Duckinfield*, 18 N. Y. 592.)

*Anderson* v. *Carr* (65 Hun, 179) was an appeal from an order punishing appellant as attorney for a defendant in an action for contempt in having violated the injunction awarded by the judgment. The action was brought by John C. Anderson, a devisee of real estate under his father's will and in possession thereof, to establish the will and to enjoin the prosecution of suits by heirs at at law against him. On an appeal from an order granting an injunction this court held that a court of equity had no inherent jurisdiction to entertain such an action and that it was not given jurisdiction by the provisions of the Code of Civil Procedure then in force. (*Anderson* v. *Anderson*, 112 N. Y. 104.) Before that decision was rendered the defendant Watson compromised with the plaintiff and as a condition of the settlement consented that judgment be entered against him for the relief demanded in the complaint. That judgment declared the will invalid and enjoined Watson from impeaching the will or making any claim in contravention thereof. Subsequently to the decision of this court Watson, by the appellant as attorney, brought an action to recover property devised by the will. For this action the attorney was adjudged in contempt by the Special Term. It was contended that it having been decided

that equity had no jurisdiction to entertain the action, the judgment was void. This contention was overruled and the order punishing the appellant for contempt was affirmed. The decision was subsequently affirmed by this court. (137 N. Y. 565.)

In the case before us, if the question whether the action of the supervisors was administrative or quasi judicial were a litigable one, certainly there must be some court before which the question could be litigated. By the Constitution (Art. 6, sec. 1) on the Supreme Court is conferred general jurisdiction in law and equity. The proper proceeding to determine the question was certiorari. Jurisdiction of the parties was obtained by the service of the writ. The final order or judgment was the appropriate one for the decision of the controversy and is expressly authorized by the Code of Civil Procedure. (Section 2141.) It is true that the decision was one way when it should have been the other, but this was an error not affecting the power of the court. There is no reason why the same efficacy should not be given to a final order on certiorari as that given to other judgments, and it is elementary that a judgment of a competent court, though erroneous, is binding until reversed. (Black on Judgments, section 244.)

The learned Appellate Division misconceived the point of the decision of this court in *Knickerbocker Trust Co.* v. *Oneonta, C. & R. S. R. Co.* (201 N. Y. 379, 384). It was there held that an order of the Supreme Court made in a sequestration action authorizing the issue of receiver's certificates which should be paramount in their lien to that of an existing mortgage, was void, and this though notice of the application was given to the trustee of the·mortgage. The decision in that case, however, did not proceed on the ground that the order was erroneous (it was reversed by the Appellate Division), but because the mortgagee was not a party to the action. This is shown by the following excerpt from the opinion: "There is no

general power in a court of equity to adjudicate the rights of persons not parties to the action, or to displace or subordinate their liens or other property interests even upon notice. Ordinarily to accomplish such a result an action or proceeding must be brought against the parties affected and the issues therein tried and disposed of in the usual manner." The court had failed to obtain jurisdiction of the mortgagee. Merely serving it with a notice that application would be made to the court did not give the court jurisdiction over the person so as to render a judgment against it. The trustee could not be divested of its property rights without service upon it of some process known to the law and when brought into court an opportunity given to it to maintain its rights in the manner provided by law for the conduct of litigations. This case is different. The writ of certiorari was the appropriate and necessary writ with which to institute the litigation and by which to bring the parties before the court. It is a common-law writ known from very early times and issued by the King's Bench, the jurisdiction of which became vested in the Supreme Court of this state, and the method of the exercise of which is prescribed by the Code. It follows that the order of the Appellate Division, though erroneous until reversed, was in full force and efficacy. Therefore, the relator's paper having been designated by the supervisors after their previous designation had been annulled, was the lawfully designated county paper and remained such until the reversal of the order of the Appellate Division. For the services rendered by it during such period in publishing official notices it is entitled to be paid.

The order of the Appellate Division should be reversed and the order of the Special Term affirmed, with costs in both courts.

GRAY, WERNER, HISCOCK, COLLIN, CUDDEBACK and MILLER, JJ., concur.

Ordered accordingly.