In the Matter of the Petition of WILLIAM ALBANESE to Compel JENNIE ALBANESE, the Guardian of the Person and Property of WILLIAM ALBANESE, a Minor, to Render and Settle Her Accounts as Such Guardian.
WALTER A. FULLERTON, Appellant; WILLIAM ALBANESE and Another, Respondents.

Third Department, November 13, 1935.

*Leary & Fullerton* [*James A. Leary* and *Francis J. Neddo* of counsel], for the appellant.

*Mahoney & Gloning* [*R. Emmett Mahoney* of counsel], for the respondent William Albanese.

*Harry F. Dunkel*, for the respondent Jennie Albanese.

HILL, P. J.   Walter A. Fullerton, an attorney, appeals from an order and decree of the Surrogate's Court of Fulton county which directs that he and Jennie Albanese pay over the sum of money, with interest, which had been paid to Mrs. Albanese as general guardian of her son William, who now is twenty-one years of age. At the time Mrs. Albanese was appointed, the court dispensed with a bond under the authority of the second paragraph of section 180 of the Surrogate's Court Act.   The letters recite: " It is further ordered that a bond be dispensed with and that said guardian collect and receive all moneys and property of said ward jointly with Walter A. Fullerton and that the moneys and other property, so far as the same are conveniently capable of deposit, shall be deposited in the name of said guardian subject to the order of the Surrogate in Capitol Trust Company, Schenectady, New York." The fund was received in an action for negligence maintained on behalf of the infant by the law firm of which Fullerton is a member, and $2,400 was paid to Mrs. Albanese by a check made payable to her as guardian drawn by Fullerton on behalf of his law firm, on April 26, 1929.   The check was cashed by the guardian at the Trust Company of Fulton county.   More than a month later, $1,600 of the sum was there deposited by Mrs. Albanese in her individual account.   She drew checks thereon until September 3, 1929, when the then remaining balance of $540 was drawn and redeposited in the same bank in her name as guardian.   The guardian account was withdrawn from the bank within two weeks after it was opened. She admits that all of the money was converted and expended by herself and husband.   It does not appear that Fullerton concerned himself either with the deposit of the infant's money or with communicating the terms and conditions under which Mrs. Albanese was appointed guardian to the bank designated in the order or to

the one where the check was cashed and in which deposits later were made. In the decree appealed from it is found that the appointment of the guardian was procured by Fullerton's law firm and that his failure to cause the money to be deposited in the designated bank and to notify the depository that the moneys were subject to the order of the surrogate, was negligence, because of which the respondent has been damaged to the amount which Fullerton is required to repay.

The appellant complains that the decision against him was made by the surrogate before the expiration of the time which he had been given to file an answer to a supplemental petition, and before he had opportunity to interpose an affirmative defense. He had appeared and answered the original petition and had been called and examined as a witness by the respondents. Should this irregularity of procedure be overlooked, there would still remain the question whether the Surrogate's Court had jurisdiction to make this decree against Fullerton.

Respondents rely upon the general grant of jurisdiction contained in the second paragraph of section 40 of the Surrogate's Court Act and argue that it grants power to a surrogate and the court over which he presides, " to administer justice in all matters relating to the affairs " of infants as well as to those of decedents. The Supreme Court has never lost its constitutional and predominant jurisdiction over the affairs of infants and their guardians. (*Matter of Lee*, 220 N. Y. 532; *Finlay* v. *Finlay*, 240 id. 429.) In so far as the Legislature has granted jurisdiction to the Surrogate's Court, it is concurrent therewith. The paragraph of section 40 relied upon relates only " to the affairs of decedents." It gives no jurisdiction to adjudicate the affairs of a decedent where the subject-matter was a trust *inter vivos* and the decedent the trustee. (*Matter of Lyon*, 266 N. Y. 219; cf. *Matter of Raymond* v. *Davis*, 248 id. 67.) The jurisdiction which the surrogate has here exercised must be found, if it exists, in a later paragraph of the same section wherein authority is granted to each surrogate, " 6. To appoint and remove guardians for infants; to compel the payment and delivery *by them* of money or other property belonging to their wards; to direct and control their conduct, and settle their accounts." Fullerton was not the guardian but (Surr. Ct. Act, § 180) the " person designated in the order " who " jointly " with the guardian was to " collect and receive the moneys " of the ward which, after being collected and received, were to " be deposited in the name of such guardian, subject to the order of the surrogate, with such bank  *  *  *  as shall be designated in such order [dispensing with the bond], and shall be withdrawn or removed only on the order of the surrogate."

A person so designated was, if he undertook the assignment, required to act with the care and prudence of the ordinary man in connection with collecting and receiving the money. His duty would cease when the money was deposited in the designated bank, for, under the terms of the statute, it was there in the name of the guardian and could be removed only on the order of the surrogate. Here it is not disputed that the guardian received the money, but she did not deposit it in the designated bank. The extent of the supervision and control which the designated person was required to exercise, if he was required to do anything under all the circumstances, in connection with the deposit of the money, and whether the precautions taken by him satisfy the requirements of his trust, are questions of fact for a jury in an action for damages. The liability, if any, arises from negligence, and there might be a question as to whether the negligence of the designated person, if he was found to be negligent, was the proximate cause of the entire loss. A partial liability on behalf of the bank where the money was deposited might arise if it permitted funds to be withdrawn after it had notice that the guardian was converting and stealing the ward's money. The liability of the designated person has some analogy to the liability of a surety on a guardian's bond. Such an action may be maintained only after an execution has been issued upon a surrogate's decree against the property of the guardian and has been returned wholly or partly unsatisfied. (Surr. Ct. Act, § 113.) And, it being an action for a sum of money only, the designated person is entitled to a jury trial if an issue of fact be raised by his pleading. (Civ. Prac. Act, § 425.) The Surrogate's Court lacked jurisdiction. The appellant did not waive this by participating in the accounting proceeding. (*Matter of Rudd* v. *Hazard,* 266 N. Y. 302.)

The decree should be reversed on the law, and the petition dismissed as to the appellant Fullerton.

CRAPSER and HEFFERNAN, JJ., concur; RHODES, J., votes to reverse the decree and to grant a new trial, with an opinion, in which BLISS, J., concurs.

RHODES, J. (dissenting). Pursuant to section 180 of the Surrogate's Court Act the surrogate dispensed with a guardian's bond when he issued letters of guardianship herein, and as required by said section the order directing that letters of guardianship issue provided, " that a bond be dispensed with and that said guardian collect and receive all moneys and property of said ward jointly with Walter A. Fullerton, and that the moneys and other property,

so far as the same are conveniently capable of deposit, shall be deposited in the name of said guardian subject to the order of the Surrogate, in Capitol Trust Company, Schenectady, New York."

Appellant's law firm received a sum of money belonging to the infant and a check therefor drawn by appellant on behalf of said firm was made payable to the guardian who did not deposit it in the bank designated by the surrogate, but drew the cash on it and stole the money.

Later a proceeding was brought in Surrogate's Court to compel the guardian to account and appellant was made a party to that proceeding. As a result of that proceeding, the surrogate made the decree from which the appeal is taken, by which decree the guardian and said appellant were directed to pay the sum of $2,400 and interest, by paying to the attorneys for the ward the sum of $538.40 and the balance of $2,213.87 to said ward, now of age.

It is now asserted that the surrogate lacked jurisdiction to render the decree herein against the appellant.

When the surrogate granted the order dispensing with the bond upon the issuance of letters of guardianship, and appellant assumed to act under said order he became *pro tanto* an officer or agency of the court, and there devolved upon him the obligation to discharge the duty imposed upon him by the order of the court.

By subdivision 11 of section 20 of the Surrogate's Court Act the surrogate is granted authority " To exercise such incidental powers as are necessary to carry into effect the powers expressly conferred."

The rule is universal that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree. (*People ex rel. Republican & J. Co.* v. *Lazansky*, 208 N. Y. 435, 438. See, also, *Matter of Dissosway*, 91 N. Y. 235.)

Here the surrogate has made a lawful order in substance directing the appellant to receive the money and deposit it in the name of the guardian in a specified trust company. That order has not been complied with. Under the incidental powers of the Surrogate's Court I think it had authority to compel obedience to this order.

The appellant having assumed the obligation to comply with the order, and it appearing that it has not been complied with, *prima facie*, appellant is obligated to do what he was required to do. Of course, he should have the right to establish, if he can, legal reason for non-compliance. The appellant says that he has not had such an opportunity; that in the proceeding before the surrogate he interposed objection to the jurisdiction, and that it was understood that further proceedings were to be held in abeyance pending the

decision by the surrogate upon the question of jurisdiction; that thereupon the surrogate proceeded to determine the question and that thereafter appellant had no opportunity to introduce evidence in support of his defense. The respondent William Albanese disputes this, but we may assume that the appellant did understand that he was to have an opportunity to introduce evidence.

Under the circumstances, in the exercise of the discretion vested in this court, the decree, in so far as appealed from, should be reversed upon the facts and a new trial granted, with costs to the appellant to abide the event.

BLISS, J., concurs.

Decree reversed on the law in accordance with opinion, and petition dismissed as to the appellant Fullerton.